**Stephon D. Woods, D.C. Bar No. 1025232**
**Assistant Attorney General**
**Office of the Attorney General**
  **for the District of Columbia**
**400 6th Street, N.W.**
**Washington, DC 20001**
**Tel: (202) 442-9882**
Stephon.Woods@dc.gov

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In the Matter of**<br><br>**4559 BENNING RD SE DE, LLC,**<br><br>  Debtor. | ) <br> ) <br> ) <br> ) <br> ) **Case No. 25-11583-MFW** <br> ) <br> ) **Chapter 7** <br> ) <br> ) <br> ) |

**EMERGENCY MOTION OF THE DISTRICT OF COLUMBIA TO CONTINUE**
**RETENTION AND FUNDING OF STATE COURT-ORDERED RECEIVER**
**PURSUANT TO 11 U.S.C. § 543(d)**

The District of Columbia ("District"), by and through its attorneys, the Office of the Attorney General for the District of Columbia, hereby files its Emergency Motion to Continue Retention and Funding of State Court-Ordered Receiver Pursuant to 11 U.S.C. § 543 ("Motion to Retain"). In support thereof, the District states as follows:

**I.    JURISDICTION**

(1) This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and 11 U.S.C. § 701 *et seq.* This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.    PARTIES**

(2) The District, a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United

1

States. The District files this action through its chief legal officer, the Attorney General for the District of Columbia. The Attorney General has general charge and conduct of all legal business of the District and all suits and claims initiated by and against the District and is responsible for upholding the public interest.  D.C. Code § 1-301.81(a)(1).

(3) 4559 Benning Rd SE DE, LLC ("Debtor") is a corporate entity organized and incorporated under the laws of Delaware on April 7, 2025, and maintains a principal place of business at 8, The Green Suite A, Dover, DE 19901. Debtor purports to hold title to a 36-unit residential apartment complex located at 4480 C Street, SE, 4559 Benning Road, SE, and 4569 Benning Road, SE, Washington, D.C. 20016 (collectively the "Benning Road Apartments" or the "Property").

### III.    FACTUAL AND PROCEDURAL BACKGROUND

(4) The District filed its original complaint and petition in the District of Columbia Superior Court against Defendant The Bennington Corporation and its principal Mehrdad Valibeigi on October 15, 2018, alleging violations of the Tenant Receivership Act (TRA), D.C. Code §§ 42-3651.08, and the Consumer Protection Procedures Act (CPPA), D.C. Code §§ 28-3901 to 28-3913. *See District of Columbia v. The Bennington Corporation, et al.*, D.C. Super. Ct. Case No. 2018-CA-007253-B (Superior Court Litigation).

(5) On July 28, 2020, the District amended its complaint to add an additional count for judicial dissolution of Defendant The Bennington Corporation. Two days later, on July 30, 2020, The Bennington Corporation filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of Columbia. *In re The Bennington Corporation*, No. 20-00321-ELG (Bankr. D.D.C. 2020).

(6) On March 26, 2021, an entity owned and operated by Ali "Sam" Razjooyan ("Mr. Razjooyan") purchased the Property for $3,340,000 from the Chapter 11 Trustee appointed in the D.C. bankruptcy case. Mr. Razjooyan entered into a Memorandum of Understanding (MOU) with the existing tenants to make outstanding repairs and bring the Property into compliance with the District's Housing and Property Maintenance Codes.

(7) Mr. Razjooyan took title to the Property through the entity 4559 Benning Rd SE LLC.

(8) The District substituted the same purchasing entity (4559 Benning Rd SE LLC) as a Respondent in the District's Superior Court litigation for the claims under the TRA. The purpose of the substitution was to adopt the MOU as the abatement plan at the Property, as § 42-3651.04(a)(1) of the TRA requires an owner to submit a plan to abate the conditions alleged in the petition upon filing.[1]

(9) Since then, the District has been engaged in protracted litigation regarding Mr. Razjooyan's refusal to comply with the terms of the abatement plan/MOU.

(10) In or around July of 2025, in the course of addressing Mr. Razjooyan's failure to comply with court orders, the District and the Court learned that Mr. Razjooyan had secretly transferred his ownership interest in the Property to the Debtor back in May of 2025, despite his numerous court appearances between May and, as recently as, August 11, 2025, in which he represented that he and his entity were the owners and/or managers of the Property.

(11) Upon further investigation into the transfer, the District learned that the Debtor purported to purchase the property from 4559 Benning Rd SE LLC for $11,800,000. Records filed

---

[1] State-court ordered receivership over property does not terminate upon transfer of ownership, and thus, the new owner was required to be substituted as a Respondent (*See* Ex. 7, Order, at 7, *District of Columbia v. 1309 Alabama Ave SE, LLC, et al.*, No. 2016-CA-000162-B (D.C. Super. Ct. July 13, 2018) (holding that a transfer of ownership via deed in lieu of foreclosure did not terminate the receiver and obligated the new purchaser to fund the receiver).

with the DC Recorder of Deeds attest that this purchase price was comprised of a $6,610,000 loan (from creditor New Day Commercial Capital) and $5,190,000 in cash that the buyer was supposed to have brought to the transaction. Ex. 1, Real Property Recordation and Transfer Tax Form. However, financial records and other information obtained by the District show that the Debtor did not contribute the cash amount and that, in fact, the bank statements that the Debtor, acting through Mr. Razjooyan and Mr. McReynolds, submitted to the lender to prove its access to cash were forged. The Debtor also submitted fraudulent rent rolls and made other material misrepresentations on its loan application, such as claiming that Mr. McReynolds owned two other properties that, in fact, were owned by Mr. Razjooyan. *See* New Day Loan Application, Ex. 2; *see also* 1850-1854 Kendall St NE LLE Deed of Trust at 11, Ex. 3; *see also* 1827 Good Hope Rd SE LLE Deed of Trust at 23, Ex. 4, *In re 4559 Benning Road SE DE, LLC*, No. 25-11583, ECF No. 12 (Bankr. D. Del. Sep. 1, 2025).

(12) Notwithstanding the obvious concerns around the financing and transfer of ownership, with this potential new ownership in place,[2] the District moved to amend its Complaint on August 11, 2025, to add the Debtor as Defendant/Respondent. The Second Amended Complaint, naming Debtor as a Defendant, was docketed on August 13, 2025.

(13) On August 6, 2025, the District evacuated 60 tenants, including 22 children and 38 adults, as well as 16 pets, from the residential units at the Property. The evacuation was necessary because that same day, the District had discovered imminent fire hazards in the mechanical rooms in all three buildings, an active gas leak in at least one unit, illegal work on the gas lines in all three

---

[2] The validity (and ultimately, the voidability) of this purported transfer of title is subject of additional debate, as D.C. Code § 42-3404.02 (the Tenant Opportunity to Purchase Act or "TOPA") affords the tenants of the building the first right of refusal when an owner intends to sell a building, yet here there is no indication Mr. Razjooyan satisfied the requirements under TOPA. In addition, the dates of various transfer documents call into question whether the individual who purportedly acted on behalf of the seller actually had authority to transfer the Property at the time of the sale. *See* District's Motion for Clarification and Exhibits, Attached as Exhibits 5-6.

buildings, and electric wires connecting the fire alarm systems in one building that had been cut. At the behest of District agencies, the utility providers halted electrical and gas services to the Property to avoid the substantial risk of a catastrophic, deadly fire and gas explosion. The emergency hotel housing for the tenants is being paid for by the District of Columbia's Office of Tenant Advocate ("OTA"), which currently runs a bill of $99,384.27. This funding has been extended beyond the typical two-week limit but is set to expire on September 10, 2025.

(14) On August 20, 2025, Judge Matini in the District of Columbia Superior Court appointed a receiver finding that conditions on the Property pose an immediate danger to the health, safety, and security of the tenants. The Superior Court ordered the Debtor to fund the receiver in the amount of $70,000 no later than August 20, 2025, at 5:00 P.M. The Superior Court ordered "[t]his money shall be directed to fund alternative housing for tenants temporarily displaced from the Property for the duration of the ex-parte appointment of the receiver and other expenses necessary to fund the receivership, including to abate the emergency conditions raised in the District's Motion." *See* Order Appointing Receiver, Ex. 8, *In re 4559 Benning Road SE DE, LLC*, No. 25-11583, ECF No. 12 (Bankr. D. Del. Sep. 1, 2025).

(15) On August 22, 2025, the District filed a motion for contempt as Debtor failed to fund the receiver or provide access and documentation required for the receiver to manage the Property. On August 25, 2025, the D.C. Superior Court granted the District's motion for contempt.

(16) Instead of attempting to come into compliance with the funding requirements, Debtor filed the instant bankruptcy case on August 27, 2025 in the United States Bankruptcy Court for the District of Delaware, notwithstanding the fact that the Debtor's sole asset is the Property located in Washington, D.C., its representatives are also located in the DC, Maryland, and Virginia (DMV) area, the District as a regulatory agency and creditor is located in Washington, DC, and

the 60 displaced tenants who are also unsecured creditors of the estate are located in Washington, DC.

(17) On August 28, 2025, the District moved to amend its complaint in Superior Court to include violations of the CPPA and the TRA against the Debtor's representatives as individuals, against Mr. Razjooyan, and against the previous owner LLC, which is controlled by Mr. Razjooyan. The August 28th proposed Third Amended Complaint does not include any new claims against the Debtor. All claims against the Debtor are already operative, as they are the same claims against Debtor as those in the August 13, 2025 Second Amended Complaint.

(18) As of the date of this motion, the Property is still subject to receivership. The receiver has contacted the Chapter 7 trustee to share pertinent information related to the receivership and the status of repairs at the building, as well as to coordinate steps moving forward for the effective administration of the estate.

### IV. ARGUMENT

(19) Under the Bankruptcy Code, at 11 U.S.C. § 543, a "custodian" of property of the estate must take certain actions following the filing of a bankruptcy petition. Section 543(a) limits the disbursements that may be made by a custodian, while Section 543(b) requires the custodian to deliver any property of the debtor held by the custodian to the debtor or trustee, and to file an accounting.

(20) Section 543(d)(1) authorizes the Court to excuse a custodian from each of these requirements. This section provides:

> After notice and hearing, the bankruptcy court – (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property.

11 U.S.C. § 543(d)(1). A state court receiver comes within the definition of a "custodian" within the meaning of Section 101(11) of the Bankruptcy Code.

(21)     When determining whether to except a custodian from the requirements of subsections 543(a), (b), and (c), "the paramount and sole concern" is the interests of the creditors. *In re Falconridge*, 2007 WL 3332769 at * 7 (Bankr. N.D. Ill. Nov. 8, 2007). A request for excuse from turnover requires the Court to examine (1) the debtor's likelihood of reorganization; (2) the probability that funds required for reorganization will be available; and (3) whether the evidence shows mismanagement of the property by the debtor. *In re Poplar Springs Apartments of Atlanta, Ltd.*, 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989).

(22)     Each of these factors supports keeping the receiver in place.

(23)     First, the debtor is unlikely to reorganize because it filed a Chapter 7 liquidation bankruptcy, rather than a Chapter 11 reorganization. Even if the case had been filed under Chapter 11 (or is later converted), the Debtor would still be unlikely to reorganize because its ability to do so depends on the value of the Property, which is the Debtor's sole asset. The value of the Property, in turn, depends on its condition. The record in the Superior Court litigation is replete with admissions by the Debtor and previous owners, as well as copious evidence and detailed findings by the Superior Court, that the Property is in deplorable condition. The Property is encumbered by a loan of $6,610,000, yet the previous owner purchased the Property four years ago through bankruptcy for $3,340,000 and its condition has severely deteriorated since then. Furthermore, for 2025, the taxing authority in Washington, D.C. valued the Property at only $3,257,360, which very likely more closely reflects the true fair market value based on the condition. Thus, any reorganization would have to include a sale, which would effectively dissolve the Debtor's operations and not result in a reorganization of a functional Debtor.

(24)     Second, the availability of funds for reorganization is, at best, questionable. Quite simply, Debtor could not operate the Property at a level sufficient to generate funds for repairs. *See e.g. In re Bryant Manor, LLC*, 422 B.R. 278, 290 (Bankr. D. Kan. 2010) (finding that the existence of deferred maintenance and upkeep issues on a property raises questions about the availability of sufficient funds for a reorganization). Indeed, Debtor is currently under Court Order to fund the receivership at $70,000 for relocation of the tenants, yet Debtor has failed to make this initial payment. At the hearing in Superior Court just before the Court ordered appointment and funding of the receiver, Debtor's representatives, through counsel, made numerous representations regarding their inability to fund the initial $70,000 for the receiver to cover hotel expenses. While they alluded to an agreement with another entity, TH Ventures LLC, to provide funding, no funding has materialized, even though the Debtor is under a contempt Order to fund and the Debtor's representatives, Ms. Hill and Mr. McReynolds, are each personally accruing contempt sanctions in the amount of $1,000 per day for the failure to fund the receivership. These circumstances make it unlikely that the Debtor will be able to fund the full renovation. Debtor's counsel in DC Superior Court also indicated the possibility of securing a construction loan to fund the entire rehabilitation, but he argued that securing such a loan would be difficult with the pending litigation and the appointment of a receiver. Following this logic, now that a receiver has been appointed, and certainly now that the Debtor has filed bankruptcy, obtaining such a loan, especially as the Property is already underwater on the existing loan, would be highly unlikely, if not outright impossible.

(25)     Finally, the evidence of the Debtor's mismanagement is clear, since the Property is currently declared uninhabitable, thus requiring the temporary relocation of all 60 tenants at the expense of the District. The Debtor has no plan or ability to fund the displacement of the tenants,

to address the emergency repairs to relocate the tenants back to their units, or to fund the overall rehabilitation of the Property.

(26)    Continuation of the appointment of the state-court ordered receiver is especially necessary because the Distrct is poised to request authority to use the Tenant Receivership Act Abatement Fund to pay for emergency operations at the Property and to rehouse tenants until the Property is again habitable. Under the TRA, at D.C. Code § 42-3651.06(j)(1)(A), the District is allowed to use these funds for emergency repairs at the Property, but only if the Court has appointed a receiver. Absent this funding, the only potential avenues for funding operations at the property, including the urgently needed emergency tenant housing, rest solely in the cash collateral of the estate or through additional lending from the sole secured creditor. The first option to use cash collateral is unlikely to be sufficient because the repairs are so extensive that the rents generated from the Property pale in comparison to the half-a million ballpark estimate that the receiver has made for the amount required to fully abate conditions at the Property. The latter option for funding from the secured lender is not assured, certainly not within the time period necessary to ensure that tenants have housing after the OTA funds run out on September 10, 2025.

(27)    The entire record in the Superior Court case clearly demonstrates the need for a receiver at the Property for the interest of all creditors, secured and unsecured. Since the Property is the Debtor's sole asset, it is critical that the Property is properly repaired and maintained, preserved, and its value is maximized for the bankruptcy estate. Thus, circumstances here warrant excusing compliance with subsections 543(a), (b), and (c) for all the reasons outlined above.

WHEREFORE, the District requests that the Court, pursuant to Section 543(d)(1) of the Bankruptcy Code, grants the District's Emergency Motion to Continue Retention and Funding of

State Court Ordered Receiver Pursuant to Superior Court Orders, and for such other and further relief as the Court may deem necessary.

Date: September 2, 2025        Respectfully submitted,

        BRIAN L. SCHWALB
        Attorney General for the District of Columbia

        DAVID FISHER
        Deputy Attorney General, Commercial Division

        /s/ William Burk
        William Burk, Section Chief
        Land Acquisition and Bankruptcy

        /s/ Stephon D. Woods
        STEPHON D. WOODS (DC Bar 1025232)
        Assistant Attorney General
        400 6th Street, N.W.
        Washington, DC 20001
        (202) 442-9882
        Stephon.Woods@dc.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on September 2, 2025, I caused a copy of the foregoing District of Columbia's Emergency Motion to Continue Retention and Funding of State Court-Ordered Receiver Pursuant to § 543(d) to be served on all counsel of record via the Court's electronic case filing system. Also, on September 2, 2025, I have caused a copy of the same and all attached exhibits to be mailed to parties in interest, postage prepaid, at the addresses indicated on the Court's docket.

                                                  /s/ Stephon D. Woods
                                                  Stephon D. Woods
                                                  Assistant Attorney General